IN THE UNITED STATES DISTRICT COURT OF
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

_____

ROBERT F. RODGERS, #181 608          *

      Petitioner,          *

         v.          * CIVIL ACTION NO. 1:02-CV-1215-F

GRANT CULLIVER, *et al.*,          *

      Respondents.          *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Robert Rodgers ["Rodgers"], a state inmate, on October 29, 2002.  In this petition, Rodgers challenges his conviction for first degree murder entered against him on September 10, 1997 by the Circuit Court for Dale County, Alabama. On November 6, 1997 Rodgers was sentenced under the Habitual Felony Offender Act to a term of life imprisonment without the possibility of parole.

Following Rodgers' sentencing hearing, the trial court appointed Everett Urech ["Urech"] as his counsel for post-trial motions and on appeal.  Urech filed a motion for new trial on December 1, 1997, contending that newly discovered evidence from the testimony of three witnesses would exonerate Rodgers.

In a petition for writ of mandamus filed December 17, 1997, Rodgers requested an

order from the trial court directing the Ozark Police Department to test a newly discovered

weapon.  Rodgers filed an amendment to his motion for new trial on January 5, 1998,

claiming that trial counsel had rendered ineffective assistance.  Both the motion for new trial

and petition for mandamus were set for a hearing on January 9, 1998.  After granting several

motions to extend the hearing on the motion for new trial, the trial court denied the motion

on July 24, 1998. (Doc. No. 6, Exh. A.)

On appeal, Rodgers claimed that the trial court erred when it failed to grant his request

to transport an exculpatory witness, failed to compel the Ozark Police Department to perform

a ballistics test on a newly discovered weapon, and failed to grant his motion for judgment

of acquittal.  On December 18, 1998,  the Alabama Court of Criminal Appeals issued a

memorandum opinion affirming Rodgers' murder conviction. He did not file an application

for rehearing with the appellate court nor a petition for writ of certiorari with the Alabama

Supreme Court.  (Doc. No. 6, Exhs. A-C.)

On December 18, 1999 Rodgers filed a state post-conviction petition, pursuant to Rule

32, *Alabama Rules of Criminal Procedure*. The trial court denied the petition on September

21, 2001.  Rodgers appealed the denial and presented the following claims:

1.      The trial court erred when it denied his Rule 32 petition after he requested a
        continuance on several issues;

2.      The trial court erred when it failed to grant a continuance to allow Rodgers to
        locate witnesses he subpoenaed to be present at the Rule 32 hearing;

3.      Trial counsel was ineffective for failing to move for a mistrial after trial
        counsel learned that one of the jurors knew Rodgers' family and had not
        answered voir dire questions truthfully and that this juror had knowledge of his

2

prior bad acts;

4.    Appellate counsel was ineffective for failing to obtain an adverse ruling on a petition for writ of mandamus filed after his conviction but before the hearing on his motion for new trial;

5.    The trial court erred when it denied his petition for writ of mandamus filed in conjunction with his Rule 32 petition requesting the Ozark Police Department to test a .45 caliber pistol found after trial to determine whether it was the murder weapon;

6.    Trial counsel was ineffective for failing to withdraw due to a conflict of interest.[1]

On May 24, 2002 the Alabama Court of Criminal Appeals affirmed the lower court's denial of post-conviction relief.   Rodgers' application for rehearing was denied by the criminal appeals court on June 28, 2002. The Alabama Supreme Court denied his application for writ of certiorari on October 11, 2002.  (Doc. No. 6, Exhs. E-H, Doc. No. 9, Exh. D.)

Rodgers presents the following claims in the instant habeas  petition:

1.    Trial counsel was ineffective because he failed to move for a mistrial after learning that a juror had failed to answer questions truthfully during voir dire;

2.    Appellate counsel was ineffective for failing to obtain an adverse ruling on a petition for writ of mandamus to compel the Ozark Police Department to perform a ballistics test on a newly discovered weapon;

3.    The trial court erred in denying a request to allow an exculpatory witness to testify at Rodgers' motion for new trial;

---

[1]The Alabama Court of Criminal Appeals noted that Petitioner presented numerous claims in his Rule 32 petition which he did not pursue on appeal and, therefore, deemed those claims  abandoned.  (Doc. No. 6, Exh. F at pg. 2.)

4.  The trial court erred when it failed to grant Rodgers' motion for judgment of acquittal;

5.  The evidence was insufficient to sustain his conviction.

In an amendment to his petition filed on October 20, 2003, Rodgers  presented the following claims:

1.  The trial court failed to subpoena telephone records of the victim and Shannon Ridolf which would have proved Rodgers' actual innocence;

2.  Appellate counsel was ineffective for failing to present on appeal the issue that trial counsel was ineffective for failing to subpoena the telephone records of the victim and Shannon Ridolf.

(*See* Doc. Nos. 1 & 22.)

In their answers filed with this court, Respondents argue that Rodgers' claim concerning appellate counsel as presented in his original petition entitles him to no relief as the last state court entering judgment found this claim to be without merit.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).   Respondents maintain that Rodgers' claims   that there was insufficient evidence to sustain his conviction and that  trial court erred 1) when it failed to provide funding to transport an out-of-state witness for his new trial hearing and 2) when it denied his motion for new trial, are procedurally defaulted as they were not presented to the state courts in accordance with the state's procedural rules.  *See Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir. 2000); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990).

4

In support of this argument, Respondents maintain that these claims are procedurally defaulted because Rodgers failed to pursue discretionary review of these claims following the denial of his direct appeal when he did not file an application for rehearing in the Alabama Court of Criminal Appeals and failed to seek certiorari review with the Supreme Court of Alabama. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Respondents further argue that Rodgers' claim of ineffective assistance of counsel as presented in his original petition is procedurally defaulted because the last state court to review this claim determined that it was defaulted. *See Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992) (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").

Additionally, Respondents maintain that the claims of ineffective assistance of trial and appellate counsel presented by Rodgers in an amendment to the petition filed on October 20, 2003 are barred by the one-year limitation period applicable to § 2254 petitions. *See* 28 U.S.C. § 2244(d). With respect to his claim of actual innocence, Respondents assert that this claim entitles Rodgers to no relief because he has failed to present any factual or legal basis to support this claim. (Doc. Nos. 6, 14, 16, 26, 40.)

Rodgers was provided an opportunity to file responses to the answers of Respondents and has done so. Upon review of the § 2254 petition, the answers of Respondents and Rodgers' response to the answers, the court concludes that no evidentiary hearing is required

and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.  *Procedural Default*

#### 1.  *Ineffective Assistance of Counsel*

This court may reach the merits of Rodgers procedurally defaulted claims only if he shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Coleman v. Thompson*, 501 U.S. 722 (1991), or  (2) a resulting fundamental miscarriage of justice if the federal court does not consider the merits of the claims.  *Schlup v. Delo*, 513 U.S. 298, 320 (1995).

Respondents maintain that Rodgers has defaulted his claim that counsel was ineffective for failing to move for a mistrial after learning that a juror had failed to answer questions truthfully on voir dire because the last state court to review the claim found it defaulted.[2]   Rodgers asserts that it was not possible to present the claim in his motion for new trial or on direct appeal because neither he nor appellate counsel had knowledge that his

---

[2]While the Alabama Court of Criminal Appeals noted that claims of ineffective assistance of counsel may usually be raised for the first time in a Rule 32 proceeding, it found that because Petitioner had raised ineffective assistance of counsel claims in his motion for new trial and at the hearing on the motion for new trial, his claims of attorney error presented in his Rule 32 petition could have been, but were not , raised at trial and on direct appeal.  (Doc. No. 6, Exh. F, pg. 7.)

mother advised trial counsel during the trial that she actually knew the juror in question.[3] Rodgers asserts that this information was not disclosed to him until August 1, 2001 when his mother submitted an affidavit to this effect in support of his Rule 32 petition. (Doc. No. 20.)

In order for a habeas petitioner to demonstrate cause for his default, he must establish that an objective impediment, not of his own making, denied him the opportunity of properly presenting his claims to the state courts. *McCoy v. Newsome*, 953 F.2d 1252, 1260 (11th Cir. 1992). Here, Rodgers asserts as cause for his default on his ineffective assistance of counsel claim that he learned the basis for this claim only through his mother's August 2001 affidavit.

In this affidavit, Rodgers' mother stated that  she told trial counsel she knew one of the jurors and that said juror failed to acknowledge on voir dire that she knew Rodgers and his mother, and yet trial counsel failed to move for a mistrial.  According to Rodgers, there was no way possible for this present claim of the denial of effective assistance of counsel to have been raised in a timely filed motion for a new trial, nor could it have been raised on direct appeal due to the fact my appellate counsel, nor myself had any knowledge of the fact

---

[3]According to Petitioner, his mother,  Leslie Gilbert,  was present during the jury voir dire held in his criminal case.  During voir dire,  Gloria Wiggins (who ultimately ended up as a juror in Petitioner's case) and the other potential jurors were asked whether they knew Petitioner or any of his family members. Ms. Gilbert asserts that Ms. Wiggins did not respond affirmatively to this question.  Rodgers now contends that his mother only informed him and post-conviction counsel in August 2001 that she had known Ms. Wiggins for eleven years and that she had conveyed this information to trial counsel during Petitioner's trial. According to Ms. Gilbert, she worked with Ms. Wiggins and had discussed with her on numerous occasions Petitioner and his prior criminal record.  Ms. Gilbert states that she told trial counsel at the time of Petitioner's trial that Ms. Wiggins had not answered voir dire questions truthfully because she failed to acknowledge that she knew Petitioner and his mother.  (Doc. No. 6, Exh. D, pgs. 149-52.)

that my mother, Leslie Gilbert, had told my trial counsel, Mr. Gallo, at my trial that she actually knew the juror Mrs. Wiggins."[4]  (Doc. No. 20, pg. 5.)

The court cannot conclude from the record before it that Rodgers had knowledge of the factual basis for this particular ineffective assistance of counsel claim prior to presenting it in his Rule 32 petition.  Thus, it appears that the issue was not procedurally default because Rodgers raised this claim of ineffective assistance of counsel at the first opportunity.  *See Amadeo v. Zant*, 486 U.S. 214, 221-222 (1988); *Reed v. Ross,* 468 U.S. 1, 14 (1984) ("the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met."); *Murray v. Carrier,* 477 U.S. 478, 488 (1986) ("a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable, would constitute cause under this standard.").

Alternatively, if the claim is viewed as being procedurally defaulted, Rodgers has shown cause but has not shown a reasonable probability that the outcome of his trial would have been different absent trial counsel's purported error in not requesting a mistrial due to

---

[4]Petitioner makes a somewhat related argument with respect to this allegation of juror misconduct with his contention that during the trial he overheard a female juror make comments to other jurors about his "prior bad acts." (*See* Doc. No. 1, pg. 11, Doc. No. 6, Exh. E, pg. 17.)  Petitioner argues that he brought this to the attention of trial counsel during the trial but counsel failed to move for a mistrial.  Petitioner clearly had knowledge of this particular claim when he presented his allegations of attorney error  in his motion for new trial.  Thus, as argued by Respondents, this particular claim is defaulted based on the Alabama Court of Criminal Appeals' determination that Petitioner's ineffective assistance of counsel claims could have been raised in his motion for new trial and pursued on direct appeal.  (Doc. No. 6, Exh. F, pg. 7.)  Petitioner has failed to show cause and prejudice for his default nor has he demonstrated that a fundamental miscarriage of justice will occur if the court fails to address the claim.  *Murray v. Carrier*, 477 U.S. , *Schlup v. Delo*, 513 U.S. at 321, 327.  This allegation of attorney error is, therefore, barred from consideration by procedural default.

juror misconduct.[5] *See Strickland v. Washington,* 466 U.S. 668, 694 (1984).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial. To establish a prima facie claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Williams v. Taylor*, 529 U.S. 362, 393 n. 17 (2000).

There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d

---

[5]The analysis for both procedural default and the prejudice prong of an ineffective assistance of counsel claim requires a habeas petitioner to demonstrate that the result of the trial would have been different absent the attorney's error. *See Strickland,* 466 U.S. 488, 694 (1984), and *Strickler v. Greene,* 527 U.S. 263, 285 (1999). Because of the "striking linguistic parallel" of the *Strickler* and *Strickland* standards, this Circuit treats them as "one and the same." *Mincey v. Head*, 206 F.3d 1106, 1147 (11th Cir. 2000) (*citing Prou v. United States,* 199 F.3d 37, 49 (1st Cir.1999)). Rather than discuss the claim in both contexts, the court proceeds directly to whether the ineffective assistance of counsel claim was one upon which Petitioner might prevail.

1525, 1535 (11th Cir. 1992).

The evidentiary material before the court reflects that at Rodgers' Rule 32 hearing, testimony was heard with respect to his allegation that the juror in question, Gloria Wiggins, failed to answer truthfully questions on voir dire regarding whether she knew Rodgers and/or his relatives. (Doc. No. 43, Rule 32 Transcript.) Trial counsel, Rodgers, his mother (Leslie Gilbert), and juror Wiggins, all testified about this issue. On direct examination Ms. Wiggins testified as follows:

Q. And you were one of the Jurors in the case that was tried in this courtroom against Robert Rodgers, were you not?

A. Yes.

Q. And you work out at Van Heusen?

A. Yes.

Q. How long have you worked for them?

A. Little over 13 years.

Q. Do you know Leslie Gilbert?

A. Yes.

Q. That's the lady out there in blue?

A. Yes.

Q. And you two work together?

A. In the same department.

Q. You both work for Van Heusen?

A.  Yes.

Q.  How long have you worked with Ms. Gilbert?

A.  We work now in - - I don't know how long she's been there, but I have been there 13 years.

Q.  Going back to the trial of Robert Rodgers, do you have any recollection of ever knowing Robert Rodgers before that trial?

A.  No.

Q.  As far as you know, he was a total stranger to you?

A.  Yes.

Q.  At the beginning of the trial?

A.  Yes.

Q.  You had no knowledge of his history before that trial?

A.  No.

Q.  And you had no knowledge of his case or what he was on trial for?

A.  No.

Q.  Now, Leslie Gilbert, the lady that we just talked about, did you know her by any other name?

A.  Leslie Warren.

Q.  But that's the lady back there in the blue?

A.  Right.

Q.  Did you know during the trial of this case that [that] lady, Leslie Gilbert or Leslie Warren, was the mother of Robert Rodgers?

A.  No, I didn't know.

11

Q. When did you find that out?

A.  At the end of the trial when he was found guilty.

Q.  How did you find that out?

A.  That's when she hollered and they all knew then that's who the mother was.
. . . . . .

Q.  Did you see her [Leslie Gilbert] during the trial?

A.  I saw her in the courtroom.

Q.  And what did you think when you saw her?

A.  I thought it was either family or something like that.

Q.  Family of - -

A.  Or friends.

Q.  You didn't know if she was friends with the deceased, did you?

A.  Well, that what I say, I didn't know if she was friends of the other people or who she was. She was just in the courtroom, that's all I saw.

Q.  The victim in this case was a black teenager?

A.  Right?

Q.  And she could very well have been related to him?

A.  Right.
 . . .

Q.  But you didn't know why she was there?

A.  No.

(Doc. No. 43, Rule 32 Transcript, pgs. 71-74.)  Ms. Gilbert further testified that she did not

know that Rodgers had ever worked at Van Heusen and had never discussed family matters with Leslie Gilbert at work. (*Id*. pg. 76.)

Rodgers testified that he was not present when his mother spoke with trial counsel about Ms. Wiggins and, therefore, had no personal knowledge about her conversation with trial counsel on the subject of the juror.  According to the testimony of trial counsel, he had no recollection of being told during trial about a possible problem with one of the jurors. Had he been told of any problem, trial counsel testified that he imagined he would have talked the concern over with his client to determine whether anything should have been done but simply could not recall having a discussion about the subject with either Rodgers or his mother about any misconduct by a juror.  Nor was counsel able to locate any notes in his file about this issue.  (Doc. No. 43, Rule 32 Transcript pgs. 29, 48-49, 54-55.)

In its order denying Rodgers' Rule 32 petition, the trial court found:

> [B]ased on the testimony of Petit Juror, Mrs. Wiggins, there was no misconduct by a Juror that would warrant granting a mistrial and the Defendant's Attorney, Joe Gallo, was not ineffective for not moving for a mistrial and based on Juror Wiggins' testimony the Jury was not contaminated by her presence.  Based on the proof offered, there is no evidence that Defendant's Trial Counsel was ineffective.

(Doc. No. 9, Exh. D, pg. 169.)  In ruling on Rodgers' ineffective assistance of counsel claims, the trial court stated that it applied the standard set forth in *Strickland v. Washington*, 466 U.S. 668.

When a question of juror partiality is raised, a determination on that question "may properly be made," *Smith v. Phillips*, 455 U.S. 209, 217 (1982) at a post-trial hearing "with

all interested parties permitted to participate," *Remmer v. United States,* 347 U.S. 227, 230 (1954). Such a hearing gives a defendant "the opportunity to prove actual bias." *Phillips*, 455 U.S. at 216.

Here, as reflected above, at the Rule 32 hearing Ms. Wiggins was asked all of the relevant questions regarding her alleged bias. Rodgers received "'careful consideration and plenary processing of [his claim,] including full opportunity for presentation of the relevant facts.'" *Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (quoting *Harris v. Nelson,* 394 U.S. 286, 298 (1969)). As shown through Ms. Wiggins' testimony, she stated that she knew Leslie Gilbert because they worked together but that she was unaware at the time of Rodgers' trial that Gilbert was related to him. Ms. Wiggins further testified that she realized who Ms. Gilbert was only when the verdict was read due to her reaction.

Thus, the court finds that the record supports the fact that Ms. Wiggins recognized Ms. Gilbert in the courtroom as someone she worked with but that she did not, at any time during the taking of voir dire, during the trial or during jury deliberations, know that she was Rodgers' mother. Consequently, her failure to acknowledge on voir dire that she knew any of Petitioner's relatives is understandable and meaningless. The state court was convinced, and on this record, this court is also convinced that Ms. Wiggins was free of bias or prejudice when she sat on Rodgers' jury along with 11 other individuals to determine his fate.[6]

---

[6]The state court's determination appears to be based mostly on Ms. Wiggins' own statements. As the Supreme Court noted in *Smith v. Phillips,* 455 U.S. at 217 n.7, juror bias determinations "will frequently turn upon testimony of the juror in question, but ... such evidence is [not] inherently suspect." The Court further found that "'[o]ne may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest [person] to live up to the sanctity of his oath is well

Because Rodgers has not shown that there is a reasonable probability that his conviction or sentence would have been different had trial counsel requested a mistrial based on juror misconduct he cannot show prejudice sufficient to overcome his procedural default, *Strickler v. Greene*, 527 U.S. at 296, nor, alternatively, can he show prejudice as a result of counsel's failure to request a mistrial based on juror misconduct. *Strickland*, 466 U.S. at 694.

### 2. Trial Court Error and Sufficiency of the Evidence

Respondents argue that Rodgers has also defaulted his claims 1) that the trial court erred when it denied his request to allow an exculpatory witness testify at his motion for new trial, 2) that the trial court erred when it denied his motion for judgment of acquittal, and 3) that the evidence was insufficient to sustain his conviction. Rodgers raised these claims on direct appeal but failed to file an application for rehearing in the Alabama Court of Criminal Appeals and failed to seek certiorari review in the Alabama Supreme Court.

Respondents argue that Rodgers' failure to present these claims to the highest state court with jurisdiction to consider the claims resulted in a procedural default. As cause for his procedural default, Rodgers argues that when his direct appeal became final in 1998, the

---

qualified to say whether he has an unbiased mind in a certain matter.'" *Id.* (quoting *Dennis v. United States,* 339 U.S. 162, 171 (1950)).

filing of a direct appeal was all that was required in order to properly exhaust his available remedies. (Doc. No. 20.)   As noted, to show cause, he must demonstrate that some objective factor external to the defense impeded his ability to  comply with the State's procedural rule. *Coleman v. Thompson*, 510 U.S. at 753; *Murray v. Carrier*, 477 U.S. at 488.

Here, his contention that in 1998 he was required to do no more than file a direct appeal in order to properly exhaust claims raised on direct appeal is incorrect.  Absent exceptional circumstances, a federal court will not entertain the claims of a habeas petition unless the petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997). This exhaustion requirement is not met unless a petitioner has given the state court the initial opportunity to pass upon and correct alleged violations of his or her constitutional rights. *O'Sullivan*, 526 U.S. at 844-45.

Rodgers can meet this exhaustion requirement if he allows "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the established appellate review process." *Id*. at 845. Exhaustion does not require that the highest state court rule on the merits of a petitioner's claim, but only that the court be given the opportunity to do so. *See Swanger v. Zimmerman*, 750 F.2d 291, 295 (3rd Cir.1984).

In order to exhaust remedies on direct appeal, where such is unsuccessful, the *Alabama Rules of Appellate Procedure* allow for the filing of an application for rehearing. If such application is denied, a petition for writ of certiorari may be presented to the Alabama Supreme Court. If that court declines to grant certiorari review, the issues presented on direct

16

appeal will be deemed exhausted for federal habeas review purposes.

Contrary to Rodgers' assertion, these avenues of relief were available to him at the time of his direct appeal.  *See* Rules 39 & 40, *Alabama Rules of Appellate Procedure*. Therefore, his contention that in 1998 the filing of a direct appeal was all that was required to exhaust state remedies properly is simply incorrect, and thus cannot constitute cause necessary to excuse his procedural default.

To the extent Rodgers asserts that his procedural defaults should be excused because he is innocent and a failure to address his claims would therefore result in a miscarriage of justice, he is entitled to no relief.  The miscarriage of justice standard is directly linked to innocence.  *Schlup v. Delo*, 513 U.S. at 321.  Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id.* at 315.  This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.

"To establish actual innocence, [a] petitioner must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'"  *Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-328).  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Id.* at 623-624 (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992))."

*Schlup* observes that

a substantial claim that constitutional error has caused the

17

> conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 324.

Rodgers has failed to make the requisite showing of actual innocence.  He has presented no evidence nor suggested that any exists which could satisfy the standard set forth in *Schlup*.  Consequently, his procedurally defaulted claims are foreclosed from federal habeas review.

**B.    *The Claim Adjudicated by the State Courts***

*1.  Standard of Review*

Rodgers' request for federal habeas relief is governed by 28 U.S.C. § 2254.  Under the provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. at 412, the Court held that:

> Under the "contrary to" clause a federal court may grant the writ

18

if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"  *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001) (quoting *Williams*, 529 U.S. at 409).  A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision.  *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) (*citing Williams*, 429 U.S. at 411).

Federal district courts are similarly directed to determine whether the state court's findings were based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "However, the statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact."  *Parker*, 244 F.3d at 835 (*citing McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994)).

19

### 2.  Ineffective Assistance of Appellate Counsel

Rodgers contends that appellate counsel performed deficiently when he failed to obtain an adverse ruling on a petition for writ of mandamus filed after he was convicted.  He presented this claim in his Rule 32 petition and on appeal from the trial court's denial of the petition.  Both the trial court and the Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668, when reviewing this instance of appellate attorney error.  The Alabama Court of Criminal Appeals found that the state court did not err in denying Rodgers' claim of ineffective assistance of appellate counsel.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, sets forth the clearly established federal law for purposes of evaluating allegations of ineffective assistance of counsel.  Thus, this court will determine whether the state courts' rejection of Rodgers' claim of ineffective assistance of appellate counsel "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel.  *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991).  Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise

non-meritorious issues does not constitute ineffective assistance").

Ineffective assistance of appellate counsel may be shown if a petitioner can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker....  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). However, a criminal petitioner has not necessarily received ineffective assistance when his counsel fails to present every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 752 (1983).

The court finds that the state courts did not decide Rodgers' claim of ineffective assistance of appellate counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law.  *Williams*, 362 U.S. at 412. Consequently, the state appellate court's rejection of the ineffective assistance of appellate counsel claim was not contrary to actual Supreme Court decisions.  This court must, therefore, determine whether the Alabama Court of Criminal Appeal's decision to reject the ineffective assistance of appellate counsel claim was an unreasonable application of the *Strickland* standard.

> In determining whether the state court's decision is an unreasonable application of the law set out in [applicable] Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance.  Instead, we decide only whether the state court's decision of the issue is objectively unreasonably.  *See Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000) ("Under   §2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308, [1313] (11th Cir. 2001)("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

*Wright v. Secretary for the Dept. of Corrections*, 278 F.3d 1245, 1256 (11th Cir. 2002).

In denying relief on Rodgers' allegation the appellate counsel performed deficiently,

the Alabama Court of Criminal Appeals found:

Claim 4 deals with Rodgers' petition for a writ of mandamus filed in conjunction with his Rule 32 petition requiring that the Ozark Police Department test the .45 caliber pistol, found in a cache of weapons after the trial but before the hearing on his motion for a new trial, to see if the pistol was the murder weapon and with Rodgers's contention that his appellate counsel failed to obtain an adverse ruling on the petition for a writ of mandamus that had been filed after his conviction.[FN2] (Issue V in Rodgers's brief.)   In its order denying Rodgers's Rule 32 petition, the circuit court stated:

"Based on the testimony of Officer Rex Tipton, the Ozark Police Department found a .45 caliber pistol with a cache of other weapons after the trial.  The weapons were found on a vacant lot and could not be linked to anybody.  The cache of weapons was found while the police officers were looking for a rifle.  No one has claimed ownership of the pistol or the weapons found.  Even if the pistol test [showed it to be] the murder weapon used in S.J. Walker's murder, it would not shed any light on who used the pistol to shoot S.J. Walker.  These were community guns, a stash of guns, that were available to anyone.  Therefore, based on the testimony taken at [the hearing on] the motion for new trial, the motion for writ of mandamus is denied and further, the Court considered this same motion at the motion-for-new-trial hearing and did not grant it."

(C. 169-70.)  We find that the circuit court correctly denied Rodgers's petition for writ of mandamus (filed in conjunction with Rodgers's Rule 32 petition) requiring the Ozark Police Department to test the .45 caliber pistol found in a cache of weapons.

[FN2] On direct appeal, Rodgers's appellate counsel asserted that the trial court had erred when it denied his petition for writ of mandamus requiring the Ozark Police Department to test a newly-discovered weapon to see if it was the murder weapon. This Court determined that this issue had not been preserved for our review because there was no indication in the record that the trial court had issued a ruling on this petition.

(Doc. No. 6, Exh. F pgs. 7-8.)

In light of the foregoing, the appellate court held that the trial court correctly denied Rodgers' application for writ of mandamus which he filed in conjunction with his Rule 32 petition. Accordingly, the appellate court found that appellate counsel did not render ineffective assistance of counsel when he did not obtain an adverse ruling on Rodgers' application for writ of mandamus filed after his conviction. (Doc. No. 6, Exh. F pg. 9.)

Based on the foregoing, the state court's rejection of his ineffective assistance of appellate counsel claim was objectively reasonable. *See Williams v. Taylor, supra.* This decision was likewise a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). (*See* Doc. No. 43, Rule 32 Transcript, pgs. 57-60.) Consequently, Rodgers is not entitled to habeas relief on his claim of ineffective assistance of appellate counsel. *Strickland*, 466 U.S. at 687-688.


C.    *Statute of Limitations*

In an amended petition filed on October 20, 2003, Rodgers raises two additional claims in support of his application for habeas relief. He claims that the trial court failed to subpoena telephone records of the victim and Shannon Ridolf which would have proved his

23

actual innocence and that appellate counsel was ineffective for failing to present on appeal the issue that trial counsel was ineffective for failing to subpoena the telephone records of the victim and Shannon Ridolf.

In their answer to the claims raised in Rodgers' amended petition, Respondents argue that the amended claims are barred from review by the one-year limitation period applicable to 28 U.S.C. § 2254 petitions.  *See* 28 U.S.C. § 2244(d)(1). Respondents contend that because Petitioner's conviction became final on January 6, 1999  -- **after** the effective date of the statute of limitations -- he must have filed the amendment to his § 2254 petition within a year of his conviction becoming final, exclusive of the time that any properly filed state post-conviction petition was pending in the state courts.

In further support of their limitations argument, Respondents maintain that because the claims raised in Rodgers' amended petition do not "arise out of the same set of facts as his original claims, but ar[i]se from separate conduct and occurrences in both time and type," they do not relate back to the date of his timely filed petition, and therefore, may not be considered timely filed. (*See* Doc. No. 26.). *See* F.R.Civ.P. Rule 15(c)(2) ("[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."); *see generally Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2002) ("for an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings," . . . and

24

must "arise[] from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence, in "both time and type.") (citations omitted);  *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (same); *United States v. Pittman,* 209 F.3d 314, 318 (4th Cir. 2000) (same); *United States v. Duffus,* 174 F.3d 333, 337 (3rd Cir. 1999) (same); *United States v. Craycraft,* 167 F.3d 451, 457 (8[th]  Cir. 1999) (same).[7]

Based on Respondents' argument, the court entered an order advising Rodgers that he had failed to file the amendment to his federal habeas petition within the one-year limitation period established by 28 U.S.C. § 2241(d)(1).[8]  ( Doc. No. 27.)  The order also gave Rodgers an opportunity to show cause why the claims raised in his amended petition should not be barred from review by this court.  *Id*.

In his response, Rodgers concedes that the amended claims were filed past the limitations period but argues that equitable tolling should apply because he is actually innocent of the crime for which he was convicted.

---

[7] Sections 2254 and 2255 are generally seen as *in pari materia.  See* quoting *Davis v. United States,* 417 U.S. 333, 344 (1974) ("[T]here can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254, the general federal *habeas corpus* statute.")  The 1996 amendments to the habeas corpus statutes added a one-year period  of limitation  to both § 2254 and § 2255. *See* 28 U.S.C. 2244(d)(1) ("A 1 year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court."); 28 U.S.C. § 2255 ("A 1 year period of limitation shall apply to a motion under this section.")  Thus, with regard at least to the timeliness of motions for leave to amend, the two statutes remain equivalent and this Circuit's application of F.R.Civ.P. 15(c) to § 2255 petitions is, therefore,  persuasive in the § 2254 context as well.

[8]The court notes that Respondents also make the argument that the claims raised in Rodgers' amended petition were not properly exhausted in the state courts.  They assert that the particular challenges to trial and appellate counsel's conduct as presented in the amended petition were never presented in the state courts and an attempt to litigate such claims in a third Rule 32 petition would be barred by the state's procedural rules. *See* Ala. R. Crim. P. 32.2(b-d). (*See* Doc. No. 26, pgs. 11-15.)

A one year statute of limitations is applicable to habeas corpus petitions filed in non-capital cases for persons convicted in a state court.  28 U.S.C. § 2244(d)(1).[9]  Respondents maintain that the claims raised in Rodgers' amended habeas petition are time-barred because they were not filed within the one-year "grace period" allowed under applicable case law and do not relate back to the claims raised in Rodgers' original petition.[10]

Because his conviction became final after the effective date of the statute of limitations

_____

[9]This section provides:

> (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-
>
>> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)    the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)    the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[10]Subsection (d) of 28 U.S.C. § 2244 was added by the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  This Act became effective on April 24, 1996.

and because the claims in the amended petition do not relate back to the claims raised in the original petition, Rodgers must have filed the amendment to his § 2254 petition within a year of his conviction becoming final, exclusive of the time that any properly filed state post-conviction petition was pending in the state courts.  Respondents acknowledge that Rodgers filed state post-conviction petitions on December 18, 1999 and July 22, 2002  but they assert that even allowing a tolling of the limitation period during the pendency of the  Rule 32 petitions, the limitation period expired prior to Rodgers' filing of the amendment to his present federal habeas petition.  S*ee Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *Tinker v. Moore*, 255 F.3d 1331, 1333, 1335. n.4 (11th Cir. 2001).

Rodgers filed a direct appeal of his conviction which was decided adversely to him by the Alabama Court of Criminal Appeals on December 18, 1998.  Petitioner did not file an application for rehearing nor a petition for writ of certiorari with the Alabama Supreme Court and the certificate of judgment was on January 6, 1999.  *See* Rule 41, *Alabama Rules of Criminal Procedure*.  Since Rodgers failed to file a petition for writ of certiorari with the Alabama Supreme Court, he could not petition the United States Supreme Court for review of his murder conviction and his time for seeking direct review of this conviction expired fourteen (14) days after the appellate court's denial of his appeal.  *See* Rule 40, *Alabama Rules of Appellate Procedure*.  Thus, the court concludes that Petitioner's conviction became final by operation of law on January 4, 1999, or at the latest, January 6, 1999 when the certificate of judgment was entered.  The one-year limitation period contained in section 2244(d)(1)(A) therefore began to run, at the latest, on January 6, 1999.

28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." Petitioner filed a Rule 32 petition on December 18, 1999. Thus, a period of 346 days of the limitation period ran prior to the filing of Petitioner's Rule 32 petition. The Rule 32 proceedings became final on October 11, 2002 when the Alabama Supreme Court issued a certificate of judgment. Petitioner's second Rule 32 proceedings, which he commenced on July 22, 2002, became final on March 11, 2003 when the Alabama Supreme Court issued a certificate of judgment. When the limitation period resumed running on March 12, 2003, only 19 days of the limitation period remained. Consequently, when Rodgers filed the amendment to the instant habeas petition on October 20, 2003, the limitation period ran an additional 223 days prior to this filing. The limitation period, therefore, expired before Rodgers filed his amendment to his application for federal habeas relief. See *Tinker v. Moore*, 255 F.3d at 1333, 1335. n.4 ("[A] properly filed petition in state court only tolls the time remaining within the federal limitation period.").

The limitation period "may be equitably tolled" on grounds apart from those specified in the habeas statute when "extraordinary circumstances" are present. *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). As noted, Rodgers concedes that he filed his amended petition outside the limitation period. He argues, however, that the statute of limitations should be tolled because he is actually innocent.

The limitation period under § 2244(d)(1) may be equitably tolled only when a prisoner

28

has diligently pursued his federal claims. The evidence Rodgers is relying on for his equitable tolling argument was clearly available to him before the expiration of the limitation period. "Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition," *Helton v. Sec'y for Dep't of Corr.,* 259 F.3d 1310, 1312 (11th Cir.2001); *Jones v. United States,* 304 F.3d 1035, 1039-40 (11th Cir. 2002); *Drew v. Department of Corrections,* 297 F.3d 1278, 1286 (11th Cir. 2002). "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Id*.

Rodgers argues that had counsel subpoenaed telephone records from the night the victim in his case was murdered, they would have shown that Petitioner did not call and threaten the victim on the evening the he was murdered and they also would have shown that witness Shannon Ridolf gave perjured testimony when she testified that she, the victim, and Petitioner were involved in a three-way phone conversation on the evening the victim was murdered. (Doc. No. 28.)

The undersigned finds that the evidence proffered by Rodgers does not satisfy the high actual innocence standard. *See Schlup*, 513 U.S. at 327 (actual innocence does not mean merely that the new evidence creates a reasonable doubt of the petitioner's guilt but that "no reasonable juror would have found the defendant guilty had that evidence been produced at trial."). Further, the claims presented in the amended petition are not based on a newly recognized constitutional right, and the factual predicate of the claims were readily available to Petitioner at the time of his conviction and sentence. Additionally, Petitioner presents no

29

circumstances which occurred immediately before or during the grace period that prevented his timely filing of the amended petition. Petitioner's filing of his amended petition more than seven months after the limitation period expired reveals a lack of diligence on his part which prohibits equitable tolling in this case. *See Fisher v. Johnson,* 174 F.3d 710, 715 and n. 14 (5th Cir. 1999) ("[E]quity is not intended for those who sleep on their rights.").

   In light of the foregoing, the undersigned finds no basis upon which to extend the one-year deadline and that Petitioner has not demonstrated that the claims presented in the amended petition should otherwise be subject to equitable tolling. *See Sandvik*, 177 F.3d at 1271 (tolling is appropriate where "extraordinary circumstances that are both beyond [petitioner's] control and unavoidable even with diligence" exist).

### III. Conclusion

   Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

   1. The claims presented in the original petition for habeas corpus relief be DENIED;

   2. The claims presented in the amended petition for habeas corpus relief be denied and dismissed as time-barred; and

   3. This case be DISMISSED with prejudice.

   It is further

   ORDERED that the parties shall file any objections to the said Recommendation within on or before April 25, 2005.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are

advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 14th day of April, 2005.


/s/ Vanzetta Penn McPherson
UNITED STATES MAGISTRATE JUDGE